**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**VALERIE J. BARRETT,**

**Plaintiff,**

**v.** **Case No. 8:04-cv-2776-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

**Defendant.**
**_________________________________/**

# O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is reversed and remanded.

## I.

Plaintiff was forty-nine years of age at the time of her administrative hearing. She stands 5', 4" tall and weighed 165 pounds. Plaintiff has a ninth grade education with a GED. Her past relevant work was as a nursing home assistant and machine operator. Plaintiff applied for disability benefits in August 2000, alleging disability as of May 3, 1999, by reason of injury to her left shoulder; pain in her neck, shoulder, and low back; high blood pressure; depression; insomnia; memory and concentration problems; and irritability. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that she could no longer work at any job

since she tore her rotator cuff while helping a patient in May 1999. According to Plaintiff, surgery was followed by physical therapy, and neither helped much. After moving to Florida, she received injections and was advised to have a second surgery, but she declined. Plaintiff described the pain in her left shoulder at a level eight on a scale of one to ten, with ten being the greatest pain. Her medications help some. Plaintiff reported occasional numbness in her left hand and left foot and spasms in her left leg, all of which affect her ability to hold things and to walk. She stated that she also has occasional problems with her balance and has fallen as a result. Plaintiff also complained of low back pain, which she believes began after her shoulder surgery when she slipped and fell. In addition, Plaintiff complained of severe headaches that occur three to four times a week. She stated she has to take pain pills and lie down for an hour or so to get relief. She has taken a number of medications including Vioxx, Darvocet, and Motrin. Plaintiff said the Darvocet and Vioxx made her sick.

Plaintiff also complained of depression and anxiety, but she stated that she has not received any mental health treatment aside from being prescribed Paxil, Ativan, Atarax, and Zoloft. Plaintiff described panic attacks where she becomes very warm; she feels like she is having a heart attack; her throat feels like it is closing up; and she is unable to breathe. The attacks last for up to an hour and they leave her exhausted and tired. According to Plaintiff, she has had these attacks for six or seven years, and they have grown worse.

Plaintiff continues to work part-time, about sixteen hours a week, as a companion for two elderly persons. She tried to work delivering newspapers twice a week but could not do the job. Plaintiff said that when she is not working, she lies down on the couch due to back pain and watches television. She naps during the day for about two to three hours because she does not sleep well at night. Plaintiff admitted that she did little housework, cooking, or

shopping. She had a worker's compensation claim that resulted in a settlement. See Plaintiff's testimony (R. 290-338).

Plaintiff's boyfriend, John Barown, also testified. He testified that Plaintiff has panic attacks that last for about a half hour at least once a day whereby she loses her breath, sweats, and shakes. He testified further that Plaintiff has to lie down and sleep for an hour or two afterwards, and that she has had the panic attacks for a long time. As for Plaintiff's work attempt delivering papers, Mr. Barown indicated that he had to take over the paper route because Plaintiff was unable to do the job. Additionally, he stated that Plaintiff is not a great driver and is afraid to drive in traffic. Mr. Barown also stated that he does most of the housework and grocery shopping, and he handles the checkbook. See Mr. Barown's testimony (R. 354-63).

The ALJ also took testimony from Dr. Everett Tessmer, a vocational expert (hereinafter "VE"). Assuming Plaintiff could lift fifteen pounds but had no use of her non-dominant left arm except as a helper; was capable of unskilled, routine, repetitive work; had no difficulty sitting; and could not climb, balance, stoop, crouch, kneel, or crawl, the VE opined that Plaintiff could not perform her past work but could perform work such as a teacher's aide/monitor, parking lot attendant, and companion. By his testimony, those jobs would still be available with the additional limitation of standing and walking for only two to three hours in an eight-hour day but for no more than a half hour without interruption. Upon questioning by the Plaintiff's counsel, the VE indicated that employers generally would not tolerate recurrent, severe panic attacks that occurred at least once a week. The VE opined, however, that he saw no reason why Plaintiff could not continue to do what she was doing, as a companion, on a full-time basis. See VE's testimony (R. 338-53).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of January 27, 2003, the ALJ determined that while Plaintiff has severe impairments related to left shoulder pain status-post arthroscopy and back pain, she nonetheless had the residual functional capacity to perform a limited range of sedentary, unskilled work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy such as teacher's assistant, parking lot attendant, and companion. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-24). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner failed to analyze Ms. Barrett's mental impairment in the manner required by applicable regulations prior to finding that her mental impairment was not severe;

(2) Even though the Commissioner gave "controlling weight" to Dr. Golazari's opinion, the Commissioner failed to adopt a critical part of Dr. Golazari's opinion without any explanation;

3) The Commissioner erred by relying on the VE's testimony that was inconsistent with the DOT; and

4) The Appeals Council abused its discretion in failing to remand this case for new evidence.

Upon consideration, because I find that the ALJ's work up of this case confusing and at times, even sloppy, and because I cannot determine that the ALJ has abided by the applicable standards or that the decision is supported by substantial evidence, I conclude that a remand for further review is required. Plaintiff's claims are discussed in turn.

By her first claim, Plaintiff argues that she suffers a severe mental impairment as revealed by the consulting psychologist's opinion that she suffers major depression,[1] the fact

---

[1]Dr. Mark A. Highsmith, Ph.D., found Plaintiff well-oriented with good judgment and no evidence of thought disturbance. Testing suggested either a memory loss or attention/concentration problem. He diagnosed a sleep disorder, insomnia type, due to failed shoulder surgery and major depressive disorder severe, without psychotic features. See (R. 225-28).

that her treating physician prescribed medications for anxiety and depression,[2] and her own accounts of panic attacks and lack of concentration and memory, and she urges the ALJ erred in deciding otherwise. Citing to the regulation at 20 C.F.R. § 404.1520a and Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005), Plaintiff argues that the ALJ also erred by failing to complete a Psychiatric Review Technique Form (hereinafter "PRTF") and incorporate its mode of analysis into his findings and conclusions. Plaintiff argues further that even if the ALJ implicitly conceded she suffered a mental impairment by limiting her to routine, repetitive work, his failure to employ the required analysis and set forth his findings and conclusions clearly in the decision requires that the case be remanded.

Here, I conclude the Plaintiff has presented a colorable claim of a severe mental impairment, at least with respect to a lack of memory or attention and concentration deficit. This conclusion is supported by the testing and consultative evaluation performed by Dr. Highsmith in March 2001, the testimony of Plaintiff and others, and ultimately by the ALJ's findings as well. Even the non-examining psychologist's PRTF assessment, which the ALJ cited with approval, indicated that Plaintiff had mild concentration deficits. See (R. 255). Most telling, however, is that while the ALJ concluded that Plaintiff suffered no severe mental impairment (in particular in relation to complaints of panic attacks), his residual functional capacity (hereinafter "RFC") findings reflect that her mental condition, by whatever name, limited her to unskilled, routine, repetitive jobs. Further, a fair reading of the hearing transcript suggests that this limitation is properly understood to be related to her mental condition. See (R. 342) (". . . because of her complaints of anxiety, depression or

[2]Dr. Iraj Golzari, M.D., treated Plaintiff's complaints with a number of medications including Ativan, Zoloft, and Paxil. See, e.g., (R. 265-69, 272-75).

whatever, and poor memory, I'll put her at unskilled, routine, repetitive jobs."). In these circumstances, the ALJ was required to employ the analysis of the PRTF in evaluating the mental impairment. See 20 C.F.R. § 404.1520a.

Because the ALJ's decision does not reflect that he did so, Plaintiff argues that the case must be remanded. The Commissioner does not respond directly to this argument, but she urges that because the ALJ included limitations related to Plaintiff's mental state in his hypothetical to the VE and because Plaintiff has not demonstrated that she cannot do the jobs identified by the VE, any error is harmless. As set forth below, because the manner in which the ALJ addressed the vocational evidence was problematic as well, I decline to determine whether the ALJ's failure to incorporate the PRTF analysis in his decision was harmless error. On remand, the ALJ shall address the mental limitations anew and apply the special procedure dictated by the regulations and applicable case law.[3]

By her second claim, Plaintiff complains that while the ALJ indicated he was giving controlling weight to Dr. Golazari's opinions, he failed to credit all the functional limitations imposed by the doctor. In particular, Plaintiff contends that the ALJ ignored the limitation for standing or walking for only thirty minutes without interruption and the limitation for lifting or carrying ten to fifteen pounds for a half-hour out of an eight-hour day. By her argument,

---

[3]I recognize that the Eleventh Circuit's recent decision leaves open the possibility that the failure to properly analyze a mental impairment may be harmless error. See Moore, 405 F.3d at 1214. Here, it is arguable that any error was harmless given that a PRTF was completed by a non-examining doctor and the ALJ cited to this report with approval. Further, it appears the ALJ did review the medical records, and despite concluding Plaintiff suffered no severe mental impairment, he ultimately credited Plaintiff with some limitations because of her mental condition. As such, were this the only allegation of error, the case might fall within a harmless error exception.

the ALJ's error was compounded by his failure to include the limitation on lifting and carrying fifteen pounds for only thirty minutes per day in the hypothetical question he posed to the VE.[4] While disagreeing with Plaintiff's interpretation of the limitations, the Commissioner concedes that the ALJ did not include the limitation on lifting in his RFC finding or in his hypothetical to the VE. Nonetheless, she urges that the error is harmless as the ALJ ultimately concluded that Plaintiff could perform work as a companion, and such work, according to the Dictionary of Occupational Titles (hereinafter "DOT"), does not involve lifting and carrying on a continuous basis.

Here, the decision reflects that the ALJ expressly approved Dr. Golazari's RFC. See (R. 20). As the assessment reads in relation to Plaintiff's ability to lift or carry, it is difficult to decipher. See (R. 222). As the ALJ interpreted the limitation, Plaintiff could lift or carry up to fifteen pounds with her dominant right arm (apparently without limitation), but could not use her left arm except as a helper/companion. By Plaintiff's reading, the doctor limited her to lifting and/or carrying fifteen pounds for no more than thirty minutes in an eight-hour day. By the Commissioner's interpretation, the limitation was for lifting and/or carrying ten to fifteen pounds at half-hour intervals throughout an eight-hour day. By my own reading, I am unable to determine exactly what this doctor's limitation was for lifting and/or carrying. More importantly, it appears that the ALJ did not understand it, either. Instead, his interpretation reflects that he simply ignored the half-hour limitation added by the doctor. In my view, this is not a matter about which the parties and the court should be required to

---

[4]Plaintiff concedes the limitation for standing and walking was included in the questioning of the VE. Even with the limitation, the VE found jobs Plaintiff could still perform. Thus, I agree with the Commissioner that any error in failing to expressly include this limitation in the RFC as stated in the decision would not alone call for a remand.

guess. Because I cannot conclude that the ALJ actually gave controlling weight to the RFC by this treating doctor, a remand for clarification is warranted.

By her third claim, Plaintiff argues that the ALJ erred in relying on the VE's testimony since it was inconsistent with the DOT. In particular, Plaintiff contends that the DOT classifies work as a teacher's assistant as a semi-skilled, light job, and the VE incorrectly identified it as a sedentary, unskilled job. Plaintiff also argues that the VE wrongly identified the job of companion as an unskilled position given that the DOT classifies such work as semi-skilled. Citing SSR 00-4p, Plaintiff asserts that a person cannot transfer skills from an unskilled position to a semi-skilled position, and, as a result, the conclusion that she had the requisite skills to perform this work is unsupported.[5] Plaintiff further argues that in light of this conflict with the DOT, the ALJ was obliged to inquire of the VE regarding any inconsistency between his testimony and the DOT and explain in his decision how he resolved the conflict.[6]

In response, the Commissioner concedes that the jobs of teacher's assistant and parking lot attendant are no longer available. (Doc. 16 at 13). She maintains, however, that

---

[5]Although Plaintiff's past work as a certified nurse's assistant was semi-skilled, the VE testified that the skills were not transferable.

[6]The VE also identified parking lot attendant (classified as light, unskilled work by the DOT) as a third type of work that Plaintiff could perform under the ALJ's hypothetical. During the hearing, the ALJ discounted this job because of his limitation to routine, repetitive, unskilled jobs due to alleged memory and concentration deficits. See (R. 345-46, 351). Nevertheless, in his decision, he adopted the VE's testimony on this job and identified it as one in which Plaintiff could perform despite the above limitation. See (R. 22-23). On this appeal, the Commissioner abandons this job because the VE discounted the job. (Doc. 16 at 13 n.7). While it is not evident that the VE, as opposed to the ALJ, abandoned this type work, this underscores the confusion surrounding the ALJ's use of the VE.

Plaintiff could perform the job of companion as testified to by the VE, and since Plaintiff did not prove otherwise, the decision by the ALJ was supported by substantial evidence.

While not necessarily for the reasons stated by the Plaintiff, I find that the ALJ's conclusion that Plaintiff could do the job of companion is not supported by substantial evidence and a remand is necessary for further vocational work-up. Here, the ALJ limited Plaintiff to sedentary, unskilled, routine, repetitive jobs. To satisfy this limitation, the VE misstated the skill level (as set forth in the DOT) for the jobs of teacher's aide and companion, describing such work as unskilled when in fact it is classified as semi-skilled work. Although the companion job was also classified as light exertional work, the VE found Plaintiff could perform the work since she was doing it at present (albeit on a part-time basis). While I recognize that an ALJ in this circuit is free to rely upon the VE's testimony even if it is inconsistent with the DOT, and that, contrary to SSR 00-4p, the testimony of a VE trumps the DOT, see Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999), the VE's testimony in this case does not reflect an independent determination of the issue on the basis of either his experience or research; rather, it reflects his clear misapprehension of the DOT. Unlike the case in Jones, here the VE identified a job Plaintiff was unable to perform under the DOT according to her RFC, and thus a remand is warranted.

By her final claim, Plaintiff argues that the Appeals Council was obliged to remand her case to the ALJ in light of new, material evidence. Because Plaintiff's case is being remanded for further consideration on the grounds set forth above, the court needs not address this issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). Plaintiff may submit this and any other pertinent evidence to the ALJ on remand.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file. The matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 8th day of March 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record